HEARD APRIL TERM, 1872.

EMORY *vs.* DAVIS.

Appeal lies, by the Sheriff, from an order made upon return to a rule to shew cause, making the rule absolute, and directing attachment to issue against the Sheriff unless the money due on plaintiff's execution be paid by a day named.

A proceeding by rule against a Sheriff, touching the return of process, is a " special proceeding," and a final order thereon is in the nature of a final judgment, on appeal, from which the Court may revise any intermediate order in the same proceeding involving the merits and necessarily affecting the judgment.

A Sheriff is not bound to seize under execution, as the property of the judgment debtor, goods found in the possession of a third party claiming them as his own, and the Sheriff demands a bond of indemnity, which the plaintiff fails to give.

Where a plaintiff in execution allows goods, levied on by the Sheriff, to remain in the possession of the debtor, under an arrangement with him that he will sell the goods and pay the debt with the proceeds of the sale, he cannot hold the Sheriff responsible for consenting to the arrangement, nor for the subsequent loss of the goods without the fault of the Sheriff.

BEFORE GRAHAM, J., AT ORANGEBURG, OCTOBER TERM, 1871.

This was a proceeding, by rule, against Harpin Riggs, Sheriff of the County of Orangeburg ; all the orders and other proceedings being entitled in the case of *Arthur Emory* vs. *John Davis*.

The first order was as follows :

"On motion of Messrs. Glover & Glover, plaintiff's attorneys, it is ordered that Harpin Riggs, Sheriff of Orangeburg County, do shew cause, on Wednesday, May 3d, 1871, at 10 o'clock A. M., or as soon thereafter as counsel can be heard, why he has failed to make the money in the above stated case."

To this rule the Sheriff made the following return :

"The answer and return of Harpin Riggs, Sheriff, to the rule which has been served on him, requiring him "to show cause on Wednesday, May 3d, at 10 o'clock, or as soon thereafter as counsel can be heard, why he has failed to make the money in the above stated case," which said rule was served on him on the 27th day of April, 1871, respectfully shows that he paid to plaintiff's attorneys the sum of ninety dollars on said case, less the costs ; that on the 4th day of June, 1870, being ready and willing to proceed on the execution in this case, he levied on certain goods and merchandises belonging to the defendant, in his store on Russell street, in this town; but that an arrangement was entered into by the defendant, with the consent of the plaintiff's attorneys, by which the sale was suspended under said levy, and the goods were left in the possession of the defendant; that, subsequent to this arrangement, the time for making return of the execution having arrived, (to-wit: sixty days,) the Sheriff, as required by the execution, returned the same to the Clerk, with an endorsement of his action thereon ; since which time there has been no execution in the Sheriff's office upon which he could take action in the premises until the 29th day of April, 1871, and subsequent to the rule aforesaid, when a second execution was lodged in his office.

"And thus answering, Sheriff prays rule be discharged with costs."

On hearing the return the rule was discharged, and the following order made, dated May 17, 1871 :

"The Sheriff having been served with a rule to show cause why he has failed to make the money in the above stated case, and it appearing by his return to said rule that he levied, during the month of June, 1870, upon certain goods and merchandise of the defendant, and having returned the original execution to the Clerk, according to law, without having sold the goods levied on, and a new execution having been lodged in his office April    , 1871, it is ordered

that the Sheriff proceed, without delay, to sell property levied upon, and to pay out the proceeds of sale in satisfaction of said execution."

At the next Term of the Court, the following notice, signed by plaintiffs attorneys, and dated September 26th, 1871, was served on the Sheriff:

" *To H. Riggs, Sheriff of Orangeburg County:*

" Please to take notice that the undersigned will move His Honor Robert F. Graham, Judge of the First Circuit, at Orangeburg, S. C., on the fourth day of October, 1871, at 10 o'clock A. M., or as soon thereafter as counsel can be heard, for a rule requiring you to shew cause why an attachment should not issue against you for having failed to comply with an order of this Court, made at May Term, 1871, requiring you to sell the property levied upon in the above stated case, and to pay out the proceeds of sale in satisfaction of said execution."

In support of the application the plaintiff read two affidavits, one by T. H. Cooke, Esq., sworn to on May 12th, 1871, which stated " that some time during the last fall, to the best of his knowledge and belief, during the month of October, he received a message from Mrs. W. R. Treadwell to come to John Davis' store, and that John H. Renneker and Davis were moving the goods privately or secretly out of Davis' store, and that she wished him to stop them ; that he went to said store and discovered Renneker removing all of the goods and merchandise out of the store ; that, from all the attendant circumstances, he considered that Renneker was attempting to remove the goods secretly. This occurred about eleven o'clock at night."

And the other, by Malcolm J. Browning, which was sworn to on May 13th, 1871, and stated " that one night last fall, to the best of his knowledge and belief, during the month of October, he was returning to Treadwell's Hotel about eleven o'clock. When he passed John Davis' store he saw there Mrs. Treadwell and one Mr. Renneker. Mr. Renneker was removing the goods out of the store and sending them, by means of a wheelbarrow, somewhere up the street. Mrs. Treadwell was protesting against the removal of the goods, because, said she, ' Davis owes me rent.' She reproached Renneker for this clandestine proceeding, telling him it looked badly, being at night and in so secret a manner. Renneker, under her reproaches, consented to stop removing the goods until Davis

was sent for. Davis was sent for. When he came he settled with Mrs. Treadwell for his rent by giving her accounts and notes. Renneker then continued removing the goods. Deponent left. Deponent noticed that the whole transaction on the part of Renneker was clandestine and secret. He kept the door of the shop closed, only opening it for a moment when he brought the goods out to put them in the wheelbarrow."

The Sheriff made answer to the notice. It was sworn to September 30th, 1871, and is as follows:

" This deponent swears that the first execution in the said cause was lodged in his office on the 20th day of May, 1870, by virtue of which a levy was made on the 4th day of June, 1870, upon certain goods in the store house and possession of the defendant, John Davis.

" That shortly after the levy, and before the sale of the said goods so levied on as aforesaid, the said defendant paid a part of the said debt, to wit: Forty dollars, and afterwards the sum of fifty dollars, both of which amounts were applied to the judgment in said case. That, thereupon, the attorney for the plaintiff, in consideration of the said payment, agreed to and with the said defendant, Davis, to suspend the sale of the goods aforesaid by this deponent, as Sheriff, and also in consideration further that the said defendant should keep and sell the said goods himself, and out of the proceeds thereof to pay and satisfy the balance due on the said judgment. And the said defendant, Davis, then and there, in consideration of the suspending the sale aforesaid, by the Sheriff aforesaid, under the said execution, agreed. to sell the aforesaid goods, and out of the proceeds thereof, from time to time, to pay and satisfy the said judgment in full. And in accordance with said agreement, the attorney for the plaintiff then and there consented to leave, and did leave, the aforesaid goods so levied on as aforesaid in the possession and keeping of the said defendant, to sell and dispose of the same, from time to time, and for the purposes aforesaid. That afterwards, and before any further notice, the sixty days having expired, the execution aforesaid was returned by this deponent to the office of the Clerk of the Court, as required by law. That some months after the said levy, and after the expiration of the said sixty days, and the return of said execution, as aforesaid, this deponent was informed that the said goods had been

removed from and out of the store house of defendant, and from his possession, and were in the possession of one J. H. Renneker. That this deponent, though having no execution in his office, applied to the said Renneker for the said goods. That the said Renneker refused to deliver up the same to this deponent, and defied deponent to take the same; he, the said Renneker, claiming the said goods as his own property by purchase in open market from the said Davis, the defendant, and tendering to this deponent his bond of indemnity in the usual form. That this deponent then informed the plaintiff's attorney of these facts, and stated that he could not proceed to seize the goods in the possession and on the premises of a third party, (Renneker,) who claimed them as his own by purchase, without making himself, deponent, liable as a trespasser, and demanded of the said attorney a bond of indemnity, by which he could be saved harmless, which said bond the said attorney refused to give to this deponent. That no other execution was lodged in the office of this deponent until the 29th April, 1871. That under this execution, and under the others subsequently issued, he had made diligent search for the property of defendant, and for the goods aforesaid, and has been unable to find any, and has so returned the executions to the office of the Clerk of the Court. And this deponent, answering the notice aforesaid, prays that the rule be discharged with his costs."

The cause was then argued by counsel, and the Court made the following order, dated October 19th, 1871:

"Harpin Riggs, Sheriff of Orangeburg County, having been served September 26, 1871, with a rule to shew cause, on the 4th day of October, 1871, or as soon thereafter as counsel could be heard, before His Honor Robert F. Graham, why an attachment should not issue against him for having failed to comply with the annexed order of this Court, and, on the return of the rule, having failed to show sufficient cause, and the plaintiff, Arthur Emory, having filed affidavits in reply to the rule, and after hearing W. J. DeTreville, Esq., for the Sheriff, and Mortimer Glover, Esq., for the plaintiff, it is ordered that the rule be made absolute, and that an attachment do issue against the said Harpin Riggs, Sheriff of Orangeburg County, at any time after sale day in January next, unless the said Harpin Riggs shall, on or before the said sale day in January next, pay over to the plaintiff, Arthur Emory, or his at-

torneys, the sum of two hundred and forty-seven 71-100 dollars, the principal in said case, with interest from April 29, 1871, and the costs of these proceedings."

From the above order the Sheriff appealed.

*De Treville,* for appellant :

1. This case, coming up from an order, is contained in the motion papers and returns as set forth in the brief, and we cannot go outside of these.

2. This being true, from these papers we contend : 1st. That the first rule on the Sheriff having been discharged by order made May 17, 1871, the Sheriff was exonerated from all liability antecedent to the date of that order, and was, therefore, not responsible for any default in not selling under the first execution.

3. The Court, having released the Sheriff from responsibility under the first execution, virtually declared the lien of that execution was lost, when, by the order of May 17, 1871, it is said : " A *new execution* having been lodged in his office April, 1871, it is ordered that the Sheriff proceed without delay to sell the property levied on, and to pay out the proceeds in satisfaction *of said execution ;*" besides which, the first execution had expired, and had been returned by the Sheriff to the Clerk's office, as required by law, long before the said order and second execution.

The Sheriff's liability, if any, commenced then from the date of the order, May 17, 1871, and the lodgment of second execution. And the question is, was it in the power of the Sheriff to have obeyed this order and execution ? If he could not, through whose fault was it ? If he was hindered by the plaintiff's own act, then the Sheriff is not in default, and the rule should have been discharged.

4. But if the order of *discharge,* 17th May, 1871, did not destroy the lien of the first execution, so as to relieve the Sheriff from liability in not selling under it, *in point of fact,* the agreement between plaintiff and defendant, as admitted, by which the goods were taken out of the Sheriff's hands and control, and left with the defendant *to sell and dispose of* as his own, by the plaintiff, in order to realize the execution debt, *did* destroy the lien of the first execution, and amounted to a " *supersedeas* " of that execution.—*Barnes* vs. *Billington,* 1 W. C. C., 29 ; *Berry* vs. *Smith,* 3 W. C. C., 60.

In fact, to hold that the lien is valid and good, so as to bind the Sheriff, when the plaintiff interferes with the levy, stops the sale,

and takes charge of the property levied on, is a manifest absurdity. Under such circumstances the levy and its effect must necessarily be destroyed, and the Sheriff's responsibility lifted from him.— *Donham* vs. *Wild*, 19 Pick., 520 ; *Rice* vs. *Wilkins*, 21 Maine, 558 ; Shearm. & Red. on Neg., 590, and authorities cited ; *Humphrey* vs. *Hathorn*, 24 Barb., 278 ; *Mickles* vs. *Hart*, 1 Den., 548.

5. Either by the order of discharge then, or by the plaintiff's own act, the lien of the first execution and levy was destroyed, CERTAINLY WAS WAIVED ; and if the Sheriff be responsible at all, it is for not selling under the second execution, as ordered May 17, 1871.

But on this execution he returns "*nulla bona,*" and on all the subsequent executions. And in addition to that return he sets forth, *on oath*, facts which go to show that that return was caused by the plaintiff's own act. That return is uncontradicted. It shows conclusively that the power to sell under the first execution was taken from him ; and the power to sell under the second execution was a nullity, because, between the lodgment of the first and second executions, the plaintiff's own agent had put the goods out of his reach.

It is clear that the Sheriff was relieved from acting under the first execution. It is equally clear that, this having expired and been returned, he had no power to act until the second execution was lodged.—4 Johns., 450, *Lewis* vs. *Livingston.*

From the time of the levy until the second execution the goods were in the control of the plaintiff's agent, Davis, and the Sheriff was not responsible for their disposition.

The responsibility was shifted from the Sheriff to Davis :

1. When the plaintiff, while the goods were in the Sheriff's hand and custody, stopped the sale, and left them with Davis, in order to realize the debt by sale in his store.

2. When the plaintiff, preferring the proceeds of the goods, as realized by Davis, to the goods themselves in the Sheriff's hands, entrusted them to Davis *to sell,* without limit or restriction to his agency.

3. When the plaintiff, by a regular contract with Davis, *for a consideration,* employed him as his agent, and empowered him to sell and account with plaintiff for proceeds.

If, then, prior to the time when this agency was revoked—prior to the time when the Sheriff was again empowered to act—Davis, the agent, had disposed of all the goods, it was the plaintiff's own

fault, and not the Sheriff's. And, if the Sheriff could find no goods of defendant's on the lodgment of the second execution, the return " *nulla bona* " was proper therein and conclusive.

Davis being the agent of plaintiff, and not of the Sheriff, the plaintiff was responsible for all his acts done within the scope of his agency, and in the course of his employment, though done contrary to or without orders.—*Hoe* vs. *Alexander*, 1 Cr. C. C., 98.

, And even if he acted improperly and unlawfully but within scope of his authority.—*Parkinson* vs. *Wightman*, 4 Strob., 366.

Davis, the agent, was empowered to sell in his own name, in his own store, and could convey title to his vendees.—Story Agency, (4th Ed.,) 202, § 169.

What were Davis' powers ? Davis having authority to sell the goods at any time or place, (for there was no restriction as to either,) the goods being under his entire control in his store, in his place of business, the Sheriff having been relieved of the duty of selling, the latter had no power whatever to interfere with any sales made by Davis, nor had he the right, *qua* Sheriff, to inquire into the " *bona fides* " of any sales made by Davis ; and having no execution in his hands, nor any notice of any revocation of the agency of Davis from the plaintiff, nor any other instructions from plaintiff, he was powerless to seize these goods from, or stop their transfer to, Renneker, as set forth in the affidavits of Cooke and Browning, or to any other purchaser.

This being true, the affidavits of Cooke and Browning amount to nothing more than that Davis was exercising a power delegated to him by the plaintiff, with which the Sheriff had nothing to do.

So far as the merits of the case go, they are clearly with the Sheriff. If there be any conflict at all, as to the facts, the Court should have ordered an issue.—*Dawson* vs. *Dewan*, 12 Rich., 499 ; 1 M. Con. Rep., 145 ; 2 Rich., 530.

But there was no wilful default on the part of the Sheriff. All the facts negative the idea that he is in contempt, and the rule should have been discharged.—*Mongie* vs. *Cheney*, 1 Hill, 142.

Circumstances show the plaintiff did not consider Sheriff wilfully in default. The rule was not moved for until after two Courts had passed, and more than nine months after execution had been returned. The Sheriff was in no manner responsible, and the Court erred in making the rule absolute, and more particularly so, when he holds the Sheriff liable for the amount of the judgment,

when the goods out of which the Sheriff was to have made the money were taken from his hands, and no proof whatever made of the amount of the same disposed of by Davis, their agent, either to Renneker or to any one else, or at any time or times, or that the goods moved by Renneker were those levied on as Davis'.—Sedg. on Damages, 588, 592, 5th Ed.

The Sheriff has sworn that he could find no goods of defendant. The Sheriff's sworn return to the facts is conclusive, and he is entitled to have the rule discharged.

*Glover & Glover*, contra:

1. The Sheriff having refused to obey the peremptory order of May 17, 1871, which was final, and from which he did not appeal, cannot appeal from the order of October 19, 1871, which is merely directory.—S. C. Code, Sec. 11.

2. A Sheriff is liable to be attached for a contempt, or for neglect of duty.—XI Stat., 30; *Ex Parte Thurmond*, 1 Bail., 605.

3. Permitting the property to remain in possession of the defendant in execution, with his consent, is not an abandonment of the levy, but a continuance of the officer's possession.—*Moss* vs. *Moore & Adams*, 3 Hill, 276; Voorhies' Code, 9th Ed., 539, (b;) 2 Tilling. & Shear., 786.

4. "The binding quality (or lien) of an execution, like that of the judgment, continues until it is satisfied, or until length of time furnishes sufficient ground for presuming satisfaction."—*Brown* vs. *Gilliland*, 3 DeS., 539; S. C. Code, § 317; *Vance & Davis* vs. *Red & Young*, 2 Sp., 90; *Snipes* vs. *Sheriff*, 1 Bay., 294; *Greenwood* vs. *Naylor*, 1 McC., 414.

Dormant executions are never postponed but for actual fraud.—1 Smith's Lead. Ca., 80; *Lynch* vs. *Hanahan*, 9 Rich., 186; 2 Tilling. & Shear., 786, 787.

5. It was the duty of the Sheriff to sell under the peremptory order of May 17, 1871, especially as he was protected by that order.—*Gibbes* vs. *Mitchell*, 2 Bay., 120; *Toomer* vs. *Purkey*, 1 Mill, 323; *Pitman* vs. *Clark*, 1 McM., 316; *Greenwood* vs. *Colcock*, 2 Bay., 67; *Adair* vs. *McDaniel*, 1 Bail., 158.

6. The Sheriff having admitted in his return of May, 1871, that the goods were levied on as the goods of Davis, is estopped now from setting up that they did not belong to Davis. It is the duty of the Sheriff to return executions satisfied, after having made a levy.—S. C. Code, § 315; Voorhies' Code, 9th Ed., 538, (i.)

7. If Davis was the agent of any one, he was the agent of the Sheriff; but the Sheriff will not be permitted to assist Davis in committing a fraud. Renneker has taken no legal steps in this case to obtain the goods, and the question is only betwcen the plaintiff and the Sheriff.—*Hooks* vs. *Byrd,* 10 Rich., 120.

8. The Sheriff is responsible for the amount of the execution and interest.—*Bowman* vs. *Cornell,* 39 Barb., 69; *Humphrey* vs. *Hathorn,* 28 Barb., 278; *Connor* vs. *Archer,* 1 Sp., 89.

Dec. 4, 1872. The opinion of the Court was delivered by

WILLARD, A. J. The order appealed from is, in substance and effect, a final order, adjudging the Sheriff in contempt for disobedience of an order made by the Court relative to the due execution of final process, in the action above entitled.

The order in respect to which disobedience is alleged is dated May 17, 1871, and is as follows: "The Sheriff having been served with a rule to show cause why he has failed to make the money in the above stated case, and it appearing by his return to said rule that he had levied, during the month of June, 1870, upon certain goods and merchandise of the defendant, and having returned the original execution to the Clerk, according to law, without having sold the goods levied on, and a new execution having been lodged in his office April, 1871, it is ordered that the Sheriff proceed, without delay, to sell property levied upon, and to pay out the proceeds of sale in satisfaction of said execution."

The disobedience alleged consisted in the failure of the Sheriff to seize and sell certain goods, as the property of the execution debtor, that were held, or had been disposed of, by a third person, not a party to the suit, named Renneker, claiming title to the same as his own property.

The order adjudging the Sheriff in contempt, in effect, decides that it was the duty of the Sheriff, under the order above recited, to seize the goods in question in the hands of Renneker, and against his will and claim of ownership, and without being indemnified for so doing by the plaintiff in the execution, or to make good the value of such goods in the event that they could not be found.

This view of the duty of the Sheriff is urged upon two grounds: first, by the fact that these goods had, previously to their coming into the hands of Renneker, been levied upon by the Sheriff in the hands of the execution debtor as his property, and that, subsequently

to such levy, they had been improperly transferred to Renneker by the execution debtor in fraud of the levy; and, second, that such seizure was imperatively commanded by the order of May 17.

The facts, as alleged by the affidavit of the Sheriff, and not contradicted, are, that the goods in question were levied upon under an execution issued on the judgment. in question in May, 1870; that, shortly after the levy, an arrangement was made between the attorney for the plaintiff in the execution and the defendant, by which the defendant was to pay a certain amount on account of the debt, and in consideration of such payment, " the defendant should keep and sell the said goods himself, and out of the proceeds thereof to pay and satisfy the balance due on the said judgment." The Sheriff alleges that this arrangement was carried into effect, and that, in accordance with such agreement, " the attorney for the plaintiff then and there consented to leave, and did leave, the aforesaid goods, so levied on as aforesaid, in the possession and keeping of the said defendant, to sell and dispose of the same, from time to time, for the purposes aforesaid;" that, subsequently to the arrangement, the Sheriff returned the execution under which such levy had been made. A subsequent execution was lodged in the Sheriff's office in April, 1871. The Sheriff further alleges " that under this execution, and under others subsequently issued, he had made diligent search for the property of the defendant and for the goods aforesaid, and has been unable to find any, and has so returned the executions to the office of the Clerk of the Court."

The statement of the Sheriff being uncontradicted, it must be taken as a fact that he was unable to comply with the order of May 17th, assuming that, by the proper construction of that order, he was bound to seize and sell the goods delivered by the execution debtor to Renneker, inasmuch as, after due search, such goods could not be found after the delivery to the Sheriff of the execution of April, 1871.

Under these circumstances, in order to bring the Sheriff into contempt, it must be made to appear that such inability was the consequence of some wrongful act or default on the part of the Sheriff, amounting to a dereliction of his duty under the process of the Court. No such dereliction of duty is disclosed by the case, as it stands before us, either in the proceedings of the Sheriff prior to the first execution, in the fact of returning that execution unsatis-

fied, or in the proceedings subsequent to the return of such execution and prior to the issuing of the second execution.

The Sheriff was justified in leaving the property in the hands of the execution debtor under the arrangement made between the parties. If that arrangement was regarded by the parties as beneficial to themselves, the Sheriff was under no obligation to interfere with it, although he would have been justified in securing provision for the payment of his fees. There is nothing tending to show that the goods in question were removed out of the possession of the execution debtor prior to the return of the first execution. The affidavit of Cook and Browning would appear to fix the time of the transfer of the goods to Renneker, in October, 1870, while the statement of the Sheriff would make it appear that the return of that execution was made as early as July or August of that year.

It thus appears that the property in question remained in the same position in which it was placed under the arrangement between the plaintiff's attorney and the execution debtor until after the return of the first execution under which the levy had been made. Accordingly no dereliction of duty can be ascribed to the Sheriff down to the time of returning the first execution. Nor was the return of the first execution unsatisfied a dereliction of which the plaintiff is entitled to complain, as the cause of the inability of the Sheriff to find and sell the goods under the second execution. If the plaintiff regarded the return of that execution unsatisfied as injurious to his right, his proper course was to proceed against the Sheriff as for a false return. Instead of so doing, he recognized and acted upon the fact of a return, by issuing a new execution, and obtained the order of May 17th in aid of such second execution. The order of May 17th cannot be regarded as, in effect, ascertaining that the return to the first execution was false, its whole import and bearing having regard to the new execution. It is, therefore, not within the power of the plaintiff to bring forward any supposed delinquency in returning the first execution as ground for charging the Sheriff with failure to perform the duties imposed by the second execution and the order of May 17th.

Nor can the facts brought to notice as occurring subsequent to the return of the first execution, and prior to the issuing of the second execution, warrant the conclusion that the Sheriff was guilty of any official dereliction, to which his inability to execute the second execution, as against the property in question, can be ascribed. It

appears that after the return of the first execution the Sheriff obtained information that the goods in question were in the possession of Renneker. He thereupon demanded them of Renneker, who refused to surrender them, claiming them as purchased from the execution debtor. Renneker tendered his bond of indemnity to the Sheriff. The Sheriff then informed the plaintiff's attorney of the facts, and demanded a bond of indemnity from the plaintiff, which was refused.

At the time embraced in the foregoing statement of facts, the Sheriff had no execution against the property, the first having been returned, and the second not yet issued, and accordingly he was not in a position to interfere with the possession of Renneker.

But had he held an execution, the refusal of the plaintiff to furnish a bond of indemnity would have justified a refusal on the part of the Sheriff to take the goods out of Renneker's hands.

The Sheriff is not bound to seize goods claimed as the property of the judgment debtor in the hands of third persons making claim to the same. The practice at common law of calling a Sheriff's jury not prevailing in this State, he has an absolute right to demand indemnity in such cases.

The fact that the Sheriff had once levied upon the goods did not authorize him to interfere with them in the hands of Renneker. The latter claimed title under a sale made by the execution debtor, under the authority of the arrangement allowing the execution debtor to make sales. By this arrangement the plaintiff and the Sheriff were both bound, the latter having assented to it, and the right of the Sheriff, under the levy, became so far qualified as to become subject to title made under sales made by the execution debtor. Renneker, not being a party to the action, or to any proceeding connected with it, was unaffected by all such proceedings.

If the sale to Renneker was fraudulent, that was a fact only to be ascertained, properly, in a proceeding to which Renneker was a party. Thus it appears that down to the date of the issuing of the second execution the Sheriff was guilty of no dereliction of duty that occasioned his liability to execute the order of the 17th of May, as it regards the goods in question.

But it is contended that that order imperatively required the Sheriff to sell the goods in question, and must be regarded as having adjudicated the question of the duty and liability of the Sheriff in view of the situation of the property at the time. It is contended

that, as that order was not appealed from, the Sheriff was bound to perform its requirements, and that the question of his ability to perform must be regarded as one of the matters adjudged by the order. This is, in effect, the position assumed by the respondent in regard to the force and effect of the order of May 17th.

This order will not bear the construction contended for, but, if that was its true construction, we have authority, and it would be our duty, under the present appeal, to modify it so as to bear a construction more in consonance with the rights of the parties. According to the construction contended for, the order in question would have to be regarded as having adjudicated certain facts and propositions hostilely to both the Sheriff and Renneker. The terms of the order import no such effect. The direction of the order is simply to proceed in execution, and it cannot be extended by construction to the detriment of the rights of a third person not a party to it. We are bound to regard it as not intended to prejudice any right of the Sheriff or of Renneker in respect to the goods levied upon.

But, if the order of May 17th admitted of a different construction, and one that would sustain the respondent's proposition, it would be proper to modify it under the present appeal.

A proceeding by attachment against the Sheriff for misconduct touching the service or return of process is a special proceeding, in the sense of sub-division 3, Section 2, of the Code of Procedure. It is not necessarily an incident to an action, for it may arise out of an *ex parte* or summary proceeding.

Although the order appealed from is entitled in the original action, that is not in conformity to the practice at common law, and is not decisive of the character of the proceeding. The parties to the attachment proceeding are not necessarily identical with the parties to the action or other proceeding out of which it has arisen. It is generally a collateral proceeding in aid of a remedy prosecuted by action or otherwise, but it is so far independent that a final order in such proceeding is in the nature of a judgment, and may be appealed from at any time, without regard to the state of proceedings on an action to which it may be collateral.

The effect of appealing from a final order in such proceedings is, in a respect, important to this case, similar to the effect of appealing from a final judgment in an action. Upon such an appeal the Court may revise any intermediate order involving the merits and necessarily affecting the judgment.—Code, Sec. 11, Sub. 1.

The order of May 17th, if entitled to the construction contended for by the respondent, would necessarily be regarded as involving the merits and affecting the judgment, for, on that construction, the case of the Sheriff could stand as substantially adjudicated under that order.

The order of May 17th, not being final in its relation to the proceedings against the Sheriff, could not be appealed from. It is only after the proceeding against the Sheriff had culminated in a final adjudication that this Court could look into the merits of the controversy. Having the whole case before us, we are permitted to look through the whole proceeding to see that errors of law have not been committed.

The order appealed from should be set aside, and the cause remanded for further proceedings in Circuit Court, and the appeal dismissed.

*Moses*, C. J., and *Wright*, A. J., concurred.